STEVEN JAMES WEBSTER,

      Petitioner,                        Civil No. 2:18-CV-11941
                                           HONORABLE SEAN F. COX

v.                                        UNITED STATES DISTRICT JUDGE

CONNIE HORTON,

      Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DENYING THE MOTIONS TO APPOINT COUNSEL AND FOR AN EVIDENTIARY HEARING, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

Steven James Webster, ("petitioner"), confined at the Chippewa Correctional Facility in Kincheloe, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for two counts of first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a); felon in possession of a firearm, Mich. Comp. Laws § 750.224f; and possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

### I. Background

Petitioner was convicted following a jury trial in the Genesee County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals's opinion, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g., Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> On January 19, 2012, Flint Police Officers discovered the bodies of Amyre Aikins and Oscar Knuckles, Jr. in an unlit parking lot. In addition to the bodies, the police also discovered a burning Oldsmobile Alero. Aikins's body was found approximately 25 feet north of the Alero. She was lying on her back with her arms above her head. Her shirt was pulled up, exposing her breasts. There was

blood around her neck and mouth. An autopsy showed that she had been shot six times and had gunshot wounds on her abdomen, chest, forearm, upper back, middle back, and shoulder. The police recovered some bullet fragments and seven spent shell casings from the scene. A firearm examiner testified that several shell casings recovered from the scene were fired by a .380–caliber semiautomatic pistol. The gun was recovered several days later, when defendant fired it at the police while trying to avoid being detained. Defendant admitted that the gun recovered by the police was the same gun he discharged seven or eight times into the passenger door of a vehicle Aikins was apparently sitting inside of.

Knuckles, Jr.'s body was found approximately 40 feet north of the Alero. His pants and underwear were missing, and he had a very large wound on his left temple. There was shotgun wadding around his body. An autopsy of Knuckles, Jr. established that he had been shot three times by a shotgun. He had shotgun wounds on his chest, abdomen, and head. The shotgun that fired the slugs that killed Knuckles, Jr. was recovered from codefendant William Evans's home, and DNA testing established that codefendant was a major donor of the DNA on the shotgun. Further, a firearm examiner testified that the shells recovered from the scene were fired from defendant's shotgun.

After waiving his *Miranda* rights, defendant gave a statement to the police. In the statement, defendant indicated that he was in the parking lot where Knuckles, Jr. and Aikins's bodies were discovered. He explained that he saw a blue Avalanche truck that appeared to be the same vehicle someone had shot at him from in November of 2011. He said that he "thought the person who shot [him] was there on the passenger side, so [he] shot in there." He also said that the first person he came across was the driver. Defendant then candidly admitted to using a .380 caliber pistol to fire seven or eight shots into the passenger side of the Avalanche. He said that afterward he ran back to his girlfriend's house. Defendant also admitted that he wrote codefendant a letter from jail, advising codefendant to hide the shotgun that codefendant was holding the night of the shooting. At trial, defendant conceded that he was responsible for the shooting, but argued that the evidence only supported convictions for voluntary manslaughter.

*People v. Webster*, No. 319731, 2014 WL 6679524, at * 1 (Mich. Ct. App. Nov. 25, 2014)(internal footnotes omitted).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 498 Mich. 853, 865 N.W. 2d 13 (2015).

Petitioner filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. seq.,* which the trial court denied. *People v. Webster*, No. 12-03062-FC (Genesee

Cty.Cir. Ct. July 11, 2016).   The Michigan appellate courts denied petitioner leave to appeal.

*People v. Webster*, No. 336484 (Mich.Ct.App. May 12, 2017);   *lv. den.* 501 Mich. 1036, 908

N.W. 2d 903 (2018).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Did the trial court err in reversing its order granting a new trial where the jury heard inadmissible evidence that Mr. Webster wanted to have a police officer murdered?

II. The trial court erred in admitting evidence that Mr. Webster shot at the police in a separate incident.

III. Defendant was denied due process and should be granted a new trial where critical evidence related to intent was based on a recorded statement that was mischaracterized by the Sergeant Herfert. In the alternative, the prosecution committed prosecutorial misconduct by eliciting and failing to correct the testimony.

IV. Defendant's conviction for first-degree murder should be reversed due to the prosecution's presentation of constitutionally insufficient evidence of the requisite premeditation and deliberation.

V. The trial court's errors resulted in cumulative error requiring reversal.

VI. Ineffective assistance of trial counsel for failure to cross-examine Oscar Knuckles, Sr., regarding his visual impairment.

VII. Ineffective assistance of trial counsel for failing to move to strike Officer Terry Lewis' hearsay statement.

VIII. The trial court erred in denying defendant's motion for a new trial without conducting an evidentiary hearing

IX. The circuit court abused its discretion in admitting the prejudicial testimony of Officer Rodney Hall, in violation of the defendant's due process.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act

of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016).

# III. Discussion

## A. Claim # 1. The extraneous evidence claim.

Petitioner first claims that he was denied his Sixth Amendment right to an impartial jury after the jurors were inadvertently exposed to extraneous evidence. The information came from a portion of petitioner's recorded interview with police in which he indicated that he wanted to have a police officer killed. This portion of the recording was supposed to have been redacted from the tape given to jurors during deliberations, but it wasn't. Petitioner discovered, after the verdict, that the unredacted tape had been admitted when one juror mentioned that petitioner was a "bad man" because he wanted to kill a police officer.

Petitioner moved for a new trial, which the state trial court initially granted. But the prosecution moved the trial court to reconsider, arguing that the trial judge failed to consider whether the information affected the verdict. The judge interviewed the jurors individually in chambers, after which the judge vacated its earlier ruling and denied petitioner's motion for a new trial.

The Michigan Court of Appeals rejected petitioner's claim on his direct appeal:

> Here, while there is no dispute that the jury was exposed to extraneous information, defendant has failed to show that there is a "real and substantial possibility" that such information could have affected the jury's verdict because he cannot show that there is a "direct connection between the extrinsic material and the adverse verdict." Of the 11 jurors questioned by the trial court, four remembered hearing the police officer ask defendant about the threat to a police officer. Of those four, three stated that the extraneous information did not affect their decisions because they were satisfied that defendant was guilty of first-degree premeditated murder before they heard mention of the letter; the foreperson suggested that the entire jury had reached its decision before it heard the erroneously provided portion of the tape. Another juror admitted that the discussion about a police officer being threatened was important to her decision because "it just made you think that [defendant] could do it again," but that juror said that the jury did not discuss the threat as a group, and that she would have voted the same way had she not heard the conversation about the threat to a police officer. Moreover, all of the jurors explained that they had reached their

respective decisions to convict defendant of first-degree premeditated murder based on his admission to shooting into the Avalanche without knowing who was actually inside because he thought the truck belonged to someone who had shot at him in an earlier incident. There is, therefore, no "real and substantial possibility" that the erroneously unedited portion of defendant's statement affected the jury's verdict. In addition, it is unlikely that the jury used the information to infer that defendant was a bad man with a propensity to commit crimes. Although defendant was convicted of two-counts of premeditated murder and the weapons charges, he was acquitted of carjacking and two counts of armed robbery. His acquittal of those charges suggests that the jury very carefully considered the evidence against defendant and made a decision based on the evidence, not on their perception of defendant as a bad man with a propensity to commit crime.

*People v. Webster*, 2014 WL 6679524, at * 3 (internal citation and footnote omitted).

The Michigan Court of Appeals further concluded that sending the unredacted tape into the jury room was harmless error at most, in light of the substantial evidence of premeditation and deliberation against petitioner:

Here, defendant admitted that he saw the blue Avalanche parked in a parking lot, that he thought that he had been shot by an occupant of what he believed was the same truck, and that he shot into the Avalanche using a .380–caliber semiautomatic pistol. Shell casings found at the scene of the shooting matched the .380–caliber semiautomatic pistol defendant fired while he fled from police a few days after the shooting. Even though defendant was ultimately mistaken about the identities of the occupants of the truck, defendant's statements speak directly to a prior relationship between defendant and the victims. They also speak to his actions before the shooting. Defendant stated that he "thought the person who shot [him] was ... on the passenger side, so [he] shot there." He also said that he "went back to [the] car," shot in the passenger window "seven or eight" times with a .380–caliber handgun and then ran away. Thus, his own statements are relevant to establishing premeditation and deliberation. In addition, the circumstances of the killing are also evidence of premeditation and deliberation, and the brutal way in which it was carried out—defendant with a high-caliber handgun, codefendant with a shotgun, and the two men indiscriminately firing into the Avalanche without knowing who was inside—suggests that defendant had an opportunity "to think about beforehand" and "to measure and evaluate the major facets of" his decision to shoot into the truck. Moreover, from jail, defendant wrote codefendant a letter warning him to discard the shotgun codefendant had used in the shooting, which is material postshooting conduct. Further, defendant's sudden flight from police following what originated as a domestic dispute call, is also relevant on the question of intent because a "defendant's attempt to conceal the killing can be used as evidence of

premeditation." In addition, evidence of a defendant's flight from the scene after the shooting "may indicate consciousness of guilt, although evidence of flight by itself is insufficient to sustain a conviction." Finally, the evidence adduced at trial showed that defendant and codefendant were close friends who were together every day. As defendant and codefendant approached the parking lot on the night of the murders, defendant carried a .380–caliber semiautomatic pistol on his hip, and codefendant carried defendant's shotgun. As the self-proclaimed victim of an earlier shooting and, accordingly, between the two men, the one most interested in retribution, it can be inferred that defendant "intended the commission of the crime." Defendant's close friendship with codefendant, and the fact that defendant owned the shotgun codefendant fired, suggest that defendant asked or encouraged codefendant to fire the shotgun at the driver's side of the Avalanche. Also, defendant's post-arrest letter attempting to help codefendant evade arrest by concealing one of the murder weapons was an act "that assisted the commission of the crime." Given the properly admitted evidence of defendant's guilt, the inadvertent failure to redact defendant's police interview was harmless beyond a reasonable doubt. Therefore, the trial court did not abuse its discretion when it denied defendant's motion for a new trial.

*Id.*, at *4 (internal citations omitted).

It is well established that a jury's verdict "must be based upon the evidence developed at the trial." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). Under the Sixth and Fourteenth Amendments, "trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965).

"[T]he Sixth Amendment does not obligate state trial courts to investigate every allegation of bias or juror misconduct." *Williams v. Bagley,* 380 F. 3d 932, 949 (6th Cir. 2004)(citing *Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991)). Instead, a trial court is constitutionally required to inquire about potential juror bias or misconduct only when "under the circumstances presented there was a constitutionally significant likelihood that, absent questioning about [the potential bias], the jurors would not be as indifferent as (they stand)

unsworn," *Id;* (quoting *Ristaino v. Ross*, 424 U.S. 589, 596 (1976)(internal quotation marks omitted), or when "a trial court is presented with evidence that an extrinsic influence has reached the jury which has a reasonable potential for tainting that jury." *Id.* (quoting *Nevers v. Killinger* 169 F. 3d 352, 373 (6th Cir. 1999)). Moreover, "[s]ince the trial judge is in the best position to determine the nature and extent of alleged jury misconduct, his decision on the scope of proceedings necessary to discover misconduct is reviewed only for an abuse of discretion." *United States v. Rigsby,* 45 F. 3d 120, 125 (6th Cir. 1995)(quoting *United States v. Shackelford*, 777 F. 2d 1141, 1145 (6th Cir. 1985)). Finally, in a habeas corpus case, a state court's findings on whether, and how, an extraneous matter affected jury deliberations "deserve[ ] a 'high measure of deference.'" *Mahoney v. Vondergritt,* 938 F. 2d 1490, 1492 (1st Cir. 1991)(quoting *Rushen v. Spain*, 464 U.S. 114, 120 (1983)).

The question of whether a trial court has seated a fair and impartial jury is a factual one, involving an assessment of credibility. *Gall v. Parker,* 231 F. 3d 265, 308 (6th Cir. 2000)(citing *Patton v. Yount*, 467 U.S. 1025, 1038 (1984)). A state trial court's finding on the impartiality of a juror or a jury is a factual finding that is presumed correct under § 2254 unless a habeas petitioner can prove otherwise by convincing evidence. *Id.* at 334. The standard of review on habeas does not permit a court to substitute its view of possible juror bias for the state court's view; a habeas court may only overturn the state court's findings of juror impartiality if those findings were manifestly erroneous. *See DeLisle v Rivers*, 161 F. 3d 370, 382 (6th Cir. 1998).

As a general rule, a habeas petitioner is not entitled to habeas relief if the jurors affirm that they were able to put aside the extraneous information and render a verdict based on the evidence presented in court. *Williams v. Bagley*, 380 F.3d at 945 (citing *Irvin*, 366 U.S. at 722–23).

The Michigan Court of Appeals reasonably rejected petitioner's claim. Seven jurors did not remember petitioner's statement about wanting to kill a police officer and could not have been prejudiced by the exposure to external information. Three other jurors indicated that this extraneous information did not affect their decision because they were satisfied that petitioner was guilty of first-degree premeditated murder before they heard the extraneous information. The jury foreperson indicated that the entire jury had reached its decision to find petitioner guilty before even hearing the tape. The final juror questioned believed that this information was important, but she emphasized that "the jury did not discuss the threat as a group, and that she would have voted the same way had she not heard the conversation about the threat to a police officer." Every juror that was questioned explained to the judge that they reached their decisions to convict petitioner of first-degree premeditated murder based on his own admission to shooting into the Avalanche without knowing who was actually inside because petitioner thought the truck belonged to someone who had shot at him in an earlier incident.

The trial judge's findings regarding the jurors' ability to render a verdict based on the evidence presented as opposed to the extraneous information are findings of fact which are presumptively correct unless rebutted by clear and convincing evidence. Petitioner has failed to offer any evidence to rebut the judge's factual findings. Petitioner failed to show that unredacted tape, and its reference to his desire to kill a police officer, effected the jurors' verdict.

Moreover, claims concerning the effect of extraneous influences upon the jury during deliberations are subject to a harmless error analysis. *See Mason v. Mitchell*, 320 F.3d 604, 638 (6th Cir. 2003). On direct review of a conviction, a constitutional error is considered harmless only if the reviewing court finds it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24 (1967). In *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003)(per curiam),

the Supreme Court held that habeas relief would be appropriate only if a habeas petitioner could show that a state court applied harmless error review in an "'objectively unreasonable' manner."

However, in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief should be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. "Citing concerns about finality, comity, and federalism," the Supreme Court in *Brecht* "rejected the *Chapman* standard in favor of the more forgiving standard of review applied to nonconstitutional errors on direct appeal from federal convictions." *Fry v. Pliler*, 551 U.S. 112, 116 (2007)(citing *Kotteakos v. United States*, 328 U.S. 750 (1946)).

Petitioner seeks federal habeas corpus relief and thus must meet the *Brecht* standard, but that does not mean "that a state court's harmlessness determination has no significance under *Brecht*." *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015). Where a state court uses the *Chapman* standard to determine that an error was harmless beyond a reasonable doubt, a federal court cannot grant habeas relief unless the state court applied the *Chapman* harmless error standard in an objectively unreasonable manner. *Id.* at 2198-99.

The Michigan Court of Appeals reasonably concluded that the inadvertent admission of the unredacted tape with references to petitioner's wish to kill a police officer was harmless error in light of the overwhelming evidence of petitioner's guilt, including his admissions to the police. In light of all of the evidence which establishes that petitioner shot the victims and did so with premeditation and deliberation, petitioner is not entitled to habeas relief because the Michigan Court of Appeals reasonably determined that the introduction of the unredacted tape

was harmless error. *See Davis v. Ayala,* 135 S. Ct. at 2198-99.  Petitioner is not entitled to relief on his first claim.

### B.  Claims # 2 and # 9.  The prejudicial evidence claim.

Petitioner in his second and ninth claims argues that the judge abused its discretion in admitting evidence that he shot at a police officer in the course of being apprehended, claiming that the evidence should have been excluded under M.R.E. 403 because it was more prejudicial than probative.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.*  Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

Petitioner's claim that this evidence should have been excluded under M.R.E. 403 for being more prejudicial than probative does not entitle petitioner to habeas relief.  The Sixth Circuit observed that "[t]he Supreme Court has never held (except perhaps within the capital sentencing context) that a state trial court's admission of *relevant* evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F. 3d 536, 551 (6th Cir. 2012)(emphasis original).  The Michigan Court of Appeals concluded that the shooting incident was relevant and probative because it established petitioner's consciousness of guilt and also established that petitioner was in possession of a firearm. *People v. Webster*, 2014 WL 6679524, at * 5.  This Court must defer to that determination.  Petitioner is not entitled to relief.

### C. Claim # 4. The sufficiency of evidence claim.

Petitioner next contends that there was insufficient evidence of premeditation and deliberation to support his first-degree murder convictions.

The Michigan Court of Appeals concluded that the evidence was sufficient to establish that petitioner acted with premeditation and deliberation. *Webster*, 2014 WL 6679524, at * 4-5.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable

as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

To convict a defendant of first-degree murder in Michigan, the state must prove that a defendant's intentional killing of another was deliberated and premeditated. *See Scott v. Elo*, 302 F.3d 598, 602 (6th Cir. 2002)(citing *People v. Schollaert*, 194 Mich. App. 158; 486 N.W.2d 312, 318 (1992)). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001)(citing *People v. Anderson*, 209 Mich. App. 527, 537; 531 N. W. 2d 780 (1995)). Premeditation may be established through evidence of the following factors:

1. the prior relationship of the parties;
2. the defendant's actions before the killing;
3. the circumstances of the killing itself;
4. the defendant's conduct after the homicide.

*Cyars v. Hofbauer,* 383 F.3d 485, 491 (6th Cir. 2004); *Anderson*, 209 Mich. App. at 527.

Although the minimum time required under Michigan law to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *See Williams v. Jones,* 231 F. Supp. 2d 586, 594-95 (E.D. Mich. 2002)(quoting *People v. Vail,* 393 Mich. 460, 469; 227 N.W. 2d 535 (1975)). "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be sufficient to create a jury question on the issue of premeditation." *Alder v. Burt,* 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003). "[A]n opportunity for a 'second look' may occur in a matter of seconds, minutes, or hours, depending upon the totality of the circumstances surrounding the killing." *Johnson,* 159 F. Supp. 2d at 596 (quoting *People v. Berthiaume*, 59 Mich. App. 451,

456 (1975)).  Premeditation and deliberation may be inferred from the type of weapon used and the location of the wounds inflicted.  *See People v. Berry*, 198 Mich. App. 123, 128; 497 N. W. 2d 202 (1993).  Use of a lethal weapon will support an inference of an intent to kill.  *Johnson,* 159 F. Supp. 2d at 596 (citing *People v. Turner*, 62 Mich. App. 467, 470; 233 N.W. 2d 617 (1975)).  Finally, premeditation and intent to kill may be inferred from circumstantial evidence.  *See DeLisle v. Rivers,* 161 F. 3d at 389.

In the present case, there was sufficient evidence for a rational trier of fact to conclude that petitioner acted with premeditation and deliberation when he shot the victims.  The evidence established that petitioner believed that he had been shot at by the occupants of the Avalanche earlier.  Evidence that petitioner had a prior dispute with people whom he thought to be the occupants of the vehicle supports a reasonable inference that the subsequent shooting was premeditated.  *Scott,* 302 F.3d at 603.   Evidence that petitioner and his co-defendant ambushed the victims supports a finding of premeditation and deliberation.  *See Marsack v. Howes,* 300 F. Supp. 2d 483, 492 (E.D. Mich. 2004).  There was also testimony that petitioner fired multiple gunshots, which would also be sufficient to establish premeditation and deliberation.  *See Thomas v. McKee*, 571 F. App'x. 403, 407 (6th Cir. 2014).  The fact that petitioner and his co-defendant acted in concert is further evidence of premeditation.  *See e.g., People v. Jackson,* 292 Mich. App. 583, 589-90, 808 N.W. 2d 541 (2011).  Finally, the fact that petitioner fled the scene after the crime also supports a finding of premeditation.  *See e.g., Marsack v. Howes*, 300 F. Supp. 2d at 492.

A federal court's review on habeas is very deferential to the state courts regarding sufficiency of evidence claims.  This Court cannot say that the Michigan Court of Appeals' rejection of petitioner's insufficiency of evidence claim resulted in a decision that was contrary

14

to, or involved an unreasonable application of *Jackson*. *Durr v. Mitchell,* 487 F. 3d 423, 448 (6th Cir. 2007). "While there may have been other possible conclusions that the jury could have drawn from the evidence, a determination of premeditation 'beyond a reasonable doubt' does not require a jury to find that the evidence eliminates every other reasonable theory except that presented by the prosecution." *Titus v. Jackson*, 452 F. App'x. 647, 650 (6th Cir. 2011). Petitioner is not entitled to relief on his fourth claim.

### D.  Claim # 5.  The cumulative error claim.

In his fifth claim, the petitioner contends that he is entitled to habeas relief because of cumulative error.

The cumulative weight of alleged constitutional trial errors in a state prosecution does not warrant federal habeas relief, because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. *Moore v. Parker,* 425 F. 3d 250, 256 (6th Cir. 2005). Petitioner is not entitled to habeas relief on the grounds of cumulative error. *Id.*

### E.  Claim # 8. The denial of an evidentiary hearing on the post-conviction motion.

Petitioner in his eighth claim argues that the judge erred in denying an evidentiary hearing on his post-conviction motion for relief from judgment.

Petitioner is not entitled to habeas relief on his eighth claim because it involves an alleged deficiency with his state post-conviction proceedings. This Court notes that "[t]he Sixth Circuit consistently [has] held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer,* 484 F. 3d 844, 853 (6th Cir. 2007). Thus, a federal habeas corpus petition cannot be used to mount a challenge to a state's scheme of post-conviction relief. *See Greer v. Mitchell,* 264 F. 3d 663, 681 (6th Cir. 2001). The reason for this

is that the states have no constitutional obligation to provide post-conviction remedies. *Id.* (citing to *Pennsylvania v. Finley,* 481 U.S. 551, 557 (1987)). Challenges to state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because "'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody.'" *Kirby v. Dutton*, 794 F. 2d 245, 246 (6th Cir. 1986)(*quoting Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). "A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not 'result [in] ... release or a reduction in ... time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention.'" *Cress,* 484 F. 3d at 853 (*quoting Kirby*, 794 F. 2d at 247). Thus, the "'scope of the writ'" does not encompass a "'second tier of complaints about deficiencies in state post-conviction proceedings.'" *Cress,* 484 F. 3d at 853 (*quoting Kirby*, 794 F. 2d at 248). "[T]he writ is not the proper means to challenge collateral matters as opposed to the underlying state conviction giving rise to the prisoner's incarceration." *Id.* (internal quotations omitted).

The denial of an evidentiary hearing by a state court on post-conviction review does not state a claim upon which habeas relief can be granted. *See e.g. Cornwell v. Bradshaw,* 559 F. 3d 398, 411 (6th Cir. 2009). Because petitioner sought an evidentiary hearing with respect to claims that he raised in his post-conviction motion, the failure by the state courts to grant him an evidentiary hearing on these claims would not entitle him to relief. Petitioner is not entitled to habeas relief on his eighth claim.

**F. Claims # 3, 6 and 7. Petitioner's remaining claims are procedurally defaulted.**

Respondent claims that petitioner's remaining claims are procedurally defaulted for various reasons.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Respondent contends that the third claim alleging prosecutorial misconduct is procedurally defaulted because petitioner failed to preserve the issue by objecting at trial and as a result, the Michigan Court of Appeals reviewed the claim for plain error only. *People v. Webster*, 2014 WL 6679524, at * 6.

In this case, the Michigan Court of Appeals clearly indicated that by failing to object at trial, petitioner had not preserved his prosecutorial misconduct claim. The Michigan Court of Appeals' review of petitioner's claim for plain error should be viewed as enforcement of the procedural default. *Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 2001).

Respondent contends that petitioner's sixth and seventh claims are procedurally defaulted because petitioner raised these claims for the first time in his post-conviction motion and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by M.C.R. 6.508(D)(3).

The Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Webster*, 501 Mich. at 1036. The Michigan Court of Appeals denied petitioner's post-conviction appeal in a form order "because the defendant failed to establish that the trial court erred in denying the motion for relief from judgment." *People v. Webster*, No. 336484 (Mich.Ct.App. May 12, 2017). These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise his claims on his direct appeal as their rationale for rejecting his post-conviction appeals. Because the form orders in this case are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

The Genesee County Circuit Court judge in rejecting petitioner's post-conviction claims, indicated that petitioner was not entitled to relief on his claims because he failed to show cause and prejudice for failing to raise the issues on his direct appeal. *See People v. Webster*, No. 12-03062-FC, * 3. [1] Because the trial court judge denied petitioner post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), petitioner's claims are procedurally defaulted pursuant to M.C.R. 6.508(D)(3). *See Ivory v. Jackson,* 509 F. 3d 284, 292-93 (6th Cir. 2007).

---

[1] The judge's opinion can be found at ECF 7-17, Pg ID 1327-30.

Petitioner has offered no reasons for his failure to preserve his third claim at the trial level or for failing to raise his sixth and seventh claims on his appeal of right. Although ineffective assistance of counsel may constitute cause to excuse a procedural default, that claim itself must be exhausted in the state courts. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Petitioner raised several ineffective assistance of trial counsel claims in his post-conviction motion, but did not raise a claim that trial counsel was ineffective for failing to object to the alleged prosecutorial misconduct nor did he raise a claim that appellate counsel was ineffective for failing to raise his sixth and seventh claims on his appeal of right. Because petitioner never raised in the Michigan courts a specific claim about trial counsel's failure to object to the alleged prosecutorial misconduct or appellate counsel's failure to raise petitioner's sixth and seventh claims on his appeal of right, any alleged ineffectiveness of counsel cannot constitute cause to excuse petitioner's default with respect to his claims. *See Wolfe v. Bock,* 412 F. Supp. 2d 657, 684 (E.D. Mich. 2006). Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue regarding his third, sixth, or seventh claims. *Smith*, 477 U.S. at 533.

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his third, sixth or seventh claims as a ground for a writ of habeas corpus in spite of the procedural default. Petitioner's sufficiency of evidence claim is insufficient to invoke the actual innocence doctrine to the procedural default rule. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).

Finally, assuming that petitioner had established cause for the default of his claims, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief. The cause and prejudice exception is

conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F. 3d 883, 891 (6th Cir. 2007). For the reasons stated by the Michigan Court of Appeals in rejecting petitioner's third claim, the Genesee County Circuit Court in rejecting petitioner's sixth and seventh claims, and by the Assistant Michigan Attorney General in his answer to the petition for writ of habeas corpus, petitioner failed to show that his procedurally defaulted claims have any merit. Petitioner is not entitled to habeas relief on his procedurally defaulted claims.

### G. The motions for the appointment of counsel and for an evidentiary hearing are denied.

Petitioner filed motions for the appointment of counsel and for an evidentiary hearing.

There is no constitutional right to counsel in habeas proceedings. *Cobas v. Burgess,* 306 F. 3d 441, 444 (6th Cir. 2002). Because petitioner's claims lack any merit, the Court will deny petitioner's request for the appointment of counsel. *See Lemeshko v. Wrona*, 325 F. Supp. 2d 778, 788 (E.D. Mich. 2004). A habeas petitioner is not entitled to an evidentiary hearing on his claims if they lack merit. *See Stanford v. Parker,* 266 F. 3d 442, 459-60 (6th Cir. 2001). In light of the fact that petitioner's claims are meritless, he is not entitled to an evidentiary hearing.

### IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would

find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

The Court will deny petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). The Court further concludes that petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed.R.App. P. 24(a).

## V.  ORDER

Based upon the foregoing, **IT IS ORDERED** that:

(1) The petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

**(2)**  The motions for the appointment of counsel and for an evidentiary hearing (Dkts. # 11, 12) are **DENIED.**

(3) A certificate of appealability is **DENIED.**

(4) Petitioner will be **DENIED** leave to appeal *in forma pauperis*.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  April 12, 2019

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 12, 2019, by electronic and/or ordinary mail.

s/Kristen MacKay
Case Manager Generalist